UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GSC LOGISTICS, INC.,

                    Plaintiff,

          -against-                                    23-CV-5368 (JGLC)

AMAZON.COM SERVICES LLC, et al.,                       **OPINION AND ORDER**

                    Defendants.

JESSICA G. L. CLARKE, United States District Judge:

Defendants seek to have the Complaint and related exhibits be filed with certain information redacted. For the reasons stated herein, Defendants' request for redactions is GRANTED in part and DENIED in part.

## Background

Plaintiff GSC Logistics, Inc. ("GSC") filed this lawsuit alleging breach of contract and breach of the implied covenant of good faith and fair dealing against Amazon.com Services LLC ("Amazon Services") and its affiliate Amazon Logistics, Inc. ("Amazon Logistics," together with Amazon Services, "Amazon"). ECF No. 7 ("Compl."). The Complaint alleges that, "[i]n late-2020, while the pandemic was raging and the demand for Amazon's services [was] through the roof," GSC and Amazon entered into a contract for GSC to "provide transloading, transportation, and other logistics services for cargo moving through the Port of Oakland and in Northern California." Compl. ¶ 1. GSC maintains that it "hired and trained well over 200 employees and made significant other investments and changes to its business operations" to comply with the contract. *Id*. ¶ 2. The Complaint alleges that consumer demand for Amazon's products reduced dramatically "[a]s the effects of the pandemic receded." *Id*. ¶ 3. According to GSC, Amazon then "contriv[ed] baseless non-performance accusations and purport[ed] to terminate the agreement

for cause" without providing an opportunity for GSC to cure any alleged non-performance as required under the contract. *Id*. ¶ 3.

To effectuate the relationship, on December 16, 2020, GSC and Amazon entered into a Master Transportation Agreement, which "provides for the performance of certain cross-dock, transportation, shipping, and other logistics services by GSC" (the "Services"). *Id*. ¶ 23; ECF No. 7-1 ("MTA"). On February 24, 2021, GSC and Amazon entered into a Work Order for Services in connection with the MTA. Compl. ¶ 28; ECF No. 7-2 ("Work Order"). The Work Order required that GSC be prepared to cross-dock a certain number of containers each week. Compl. ¶ 33. The Work Order further provided Services levels for on-time delivery that GSC was required to meet. *Id*. ¶¶ 35–36.

The MTA sets out specific requirements that would allow Amazon to terminate the agreement for cause. *Id*. ¶¶ 38–39; MTA § 5. The Work Order contains additional detail regarding termination. It provides that Amazon could not terminate the agreement for cause if GSC demonstrated that there were mitigating circumstances that prevented GSC from complying with its performance obligations. Compl. ¶ 41; Work Order, Schedule 1. GSC was required to: (1) notify Amazon within a certain number of hours of the mitigating circumstance; (2) provide commercially reasonable evidence of the mitigating circumstance; and (3) use commercially reasonable efforts to overcome the mitigating circumstance as soon as possible. Compl. ¶¶ 40–41; Work Order, Schedule 1.

The parties agreed to a four-year term and a liquidated damages provision that would compensate GSC in the event of Amazon's breach of the parties' agreement, characterized as "Withdrawal Costs." Compl. ¶¶ 42–43; Work Order, Schedule 3. This provision required Amazon to make a payment to GSC for Amazon's early termination without cause, calculated as

an amount agreed upon between the parties (the "Withdrawal Payment") multiplied by the number of months remaining on the Work Order initial term. *Id.*

GSC alleges that on February 8, 2023, Amazon emailed GSC a Notice of Termination, purportedly terminating the Work Order for cause and stating that GSC failed to meet the service level for on-time delivery. Compl. ¶ 51; ECF No. 7-3. GSC maintains that it informed Amazon daily of mitigating circumstances relating to the service level for on-time delivery and explained GSC's commercially reasonable efforts to overcome the mitigating circumstances. Compl. ¶ 54. GSC further claims that the mitigating circumstances were caused by Amazon and third-party shippers retained and controlled by Amazon, including by Amazon's failure to supply a minimum number of containers to GSC each week. *Id.* ¶¶ 54, 62–63. The Complaint alleges that GSC advised Amazon of the Withdrawal Payments due from Amazon to GSC and that Amazon refused to make any Withdrawal Payments. *Id.* ¶¶ 101, 103.

GSC filed this action on June 23, 2023. The Complaint and related exhibits (consisting of the MTA, Work Order and Notice of Termination) were not originally filed under seal or with any redactions. Five days later Defendants submitted a letter, seeking an order from the Court that the unredacted Complaint and exhibits be removed from the docket and replaced with redacted versions. ECF No. 15. The Court ordered that the Complaint and exhibits be filed under seal pending further order of the Court and directed the parties to meet and confer regarding Defendants' requested redactions. ECF No. 14 at 2. The parties agreed to certain redactions. ECF No. 16 ("Pl.'s Letter") at 1. The agreed-upon redactions include one provision about indemnity under the MTA, the percentage increases for transload fees and certain fees for accessorials. *Id.*; *see also* ECF No. 19 ("Defs.' Letter") at 2. Following the meet and confer, Amazon agreed to unseal some previously requested redactions. Pl.'s Letter at 1.

However, there remain redactions requested by Amazon and objected to by GSC (the "Disputed Material"). The Disputed Material can be categorized into five groups: (1) Performance Standards, (2) Withdrawal Payment, (3) Notice Period, (4) Certain Fees and (5) Refund.

*Performance Standards*. The Performance Standards that Amazon seeks to redact include the minimum and maximum numbers of containers that GSC be prepared to handle, how quickly GSC could ramp up to handling a certain number of containers per week, the number of days for GSC's launch plan, service levels for on-time delivery, certain requirements for the Service Level Agreement and Minimum Levels for Termination, the number of containers Amazon supplied to GSC and directions by Amazon to GSC to slow down a certain number of containers. ECF No. 19-1 ("Ex. A to Defs.' Letter") at 2–5. These are the Performance Standards that GSC was required to meet under the Contract and that are at issue in this litigation. Amazon states that the Performance Standards described in the Complaint are "not public, not standard, and different from what Amazon might agree to with other shipping vendors." *Id*.

*Withdrawal Payment*. GSC and Amazon agreed to a liquidated damages provision, setting the amount of a monthly withdrawal agreement. Compl. ¶ 27. Amazon contends that it "does not usually agree to this type of arrangement." Ex. A to Defs.' Letter at 2–4, 9. Amazon is willing to disclose the existence of the agreement, but still alleges that disclosure alone will harm Amazon. *Id*. Amazon states that "[r]edacting the otherwise private and extremely atypical amount allegedly agreed to will provide Amazon with some protection." *Id*. Amazon contends that the alleged damages must also be redacted "because it requires simple math to figure out the allegedly agreed upon payment." *Id*. at 4–7. GSC is seeking as damages this allegedly agreed-

upon payment – the amount of the Withdrawal Payment multiplied by the number of months of the claimed early termination – in this Action. Compl. ¶ 152.

*Notice Period*. Amazon seeks to redact the time period in which Amazon must be notified if a mitigating circumstance occurs. Ex. A to Defs.' Letter at 3, 8. GSC maintains that it informed Amazon of mitigating circumstances within the required Notice Period, and therefore the alleged service level failure was excused. Compl. ¶ 54, 92–93. Like the Performance Standards, Amazon states that the Notice Period is "not public, not standard, and different from what Amazon might agree to with other shipping vendors." Ex. A to Defs.' Letter at 3, 8.

*Certain Fees*. Amazon seeks to redact the gate fee per transaction for costs associated with additional drayage providers as well as transload fees, providing the same rationale as for the Performance Standards and Notice Period. *Id*. at 7–8. Based on the Court's review of the Complaint, neither the gate fee nor the transload fees appear to be at issue in this action.

*Refund*. Amazon seeks to redact the percentage of the Withdrawal Payment that Amazon is entitled to as a refund in certain circumstances, as the refund is "not public, not standard, and different from what Amazon might agree to with other shipping vendors." *Id*. at 9. Similarly to the fees, the refund does not presently appear to be at issue in this case.

Defendants contend that the Disputed Material must be redacted because it contains highly confidential information. Defs.' Letter at 1. Defendants argue that disclosure of the specific numbers (volume standards and financials) that GSC and Amazon agreed to "will irreparably harm Amazon because it will adversely affect Amazon's ability to negotiate and/or re-negotiate with existing and future vendors." *Id*. Defendants further argue that Amazon's competitors could use the confidential information to their advantage and Amazon's detriment. *Id*.

Plaintiff contends that the Disputed Material should not be redacted, as it goes "to the very heart of the litigation" and is "integral to the public's right to understand that allegations in this action and assess the correctness of the ultimate determination on the merits." Pl.'s Letter at 1. Plaintiff further argues that Amazon's generalized claim of commercial harm has not been sufficiently explained. *Id*.

## Discussion

"There is a long-established general presumption in favor of public access to judicial documents." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 356 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016)). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995). Motions to redact or seal documents "must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)).

The Second Circuit has articulated a three-part test for determining whether documents submitted to a federal court may be sealed or redacted. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). First, a court must conclude that the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, a court must determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the presumption of access. *Id.* at 120.

## I.       Pleadings as judicial records.

With respect to the first step of the analysis, the Complaint and its supporting exhibits are plainly judicial documents subject to a presumption of public access. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,* 814 F.3d 132, 140 (2d Cir. 2016). "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Id*. at 140 (internal citation omitted).

## II.      Presumption of access to the Complaint.

"A finding that a document is a judicial document triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." *Id*. at 141 (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir.2013)). The "presumption of access" to judicial records is secured by two independent sources: the First Amendment and the common law. *Lugosch*, 435 F.3d at 121; *Newsday*, 730 F.3d at 163 ("Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."). The analysis with respect to each is somewhat different.

### a.   The common law presumption of access.

Under common law, the weight of the presumption of public access for a complaint is strong. *Bernstein*, 814 F.3d at 142. Complaints directly affect adjudications and are used to determine litigants' substantive legal rights, thus, "the presumption of access is at its zenith and thus can be overcome only by extraordinary circumstances." *Id*. Moreover, "access to complaints

allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." *Id*. at 141.

The presumption is particularly strong in this case because the Disputed Material that Defendants seek to redact is central to the underlying dispute. *Sylvania v. Ledvance LLC,* No. 20-CV-9858 (RA), 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021); *see also Delta Air Lines, Inc.*, 462 F. Supp. 3d at 357 (presumption of public access has "extraordinarily substantial weight" because "[a]ny decision that the Court makes in this matter will necessarily touch on its interpretation of the contract at issue and its terms—including the specific language that Plaintiff has requested to be redacted"). Because this action primarily sounds in breach of contract, the specific numbers that Amazon agreed to with GSC are tied to the central issue. As such, the Court will necessarily need to refer to the Disputed Material in explaining its reasoning. In *Sylvania*, the Court would "not shield from the public the key terms of the [agreement] which are critical to the claim for breach of contract." *Sylvania*, 2021 WL 412241, at *2.

That is precisely what Defendants request to be redacted here. GSC brought suit alleging that Amazon "contriv[ed] baseless non-performance accusations and purport[ed] to terminate the agreement for cause." Compl. ¶ 3. The alleged non-performance is based on GSC's alleged failure to meet service levels for on-time delivery, which, according to GSC, was due to Amazon not meeting the required number of containers it had agreed to supply to GSC. *Id*. ¶¶ 51, 89. These requirements are Performance Standards that Amazon seeks to redact. GSC additionally claims that the alleged failures were excused, as GSC informed Amazon of mitigating circumstances within the required Notice Period, a figure Amazon also seeks to redact. *Id*. ¶¶ 54, 92–93. And the damages that GSC seeks are based on the amount of the Withdrawal Payment set

forth in the parties' agreement. *Id.* ¶ 152. All of these terms are critical to determining whether there was a breach of contract, and if so, what damages are appropriate.

Defendants argue that *Sylvania* is inapposite because there the Plaintiff asked the Court to "redact *all* of the material that is critical to the adjudication for breach of contract," *Sylvania*, 2021 WL 412241, at *2 (emphasis added), whereas here, Defendants ask only to redact specific numbers, Defs.' Letter at 2. Amazon contends that redacting the Disputed Material "will not impede the Court's ability to publicly adjudicate the case on the merits." *Id*.

That argument is unavailing. The Court does not see how, for example, were Plaintiff to prevail, the Court would be able to issue a judgment if the amount claimed in damages and the Withdrawal Payment upon which the amount is based are redacted. The Performance Standards and Notice Period are also central to the dispute. If these figures were to be redacted, the public would thus be denied access to "matters that directly affect [this] adjudication." *Lugosch*, 435 F.3d at 119.

The Performance Standards, Withdrawal Payment and Notice Period are unlike Amazon's other requested redactions of Certain Fees and Refund, which do not appear to be at issue in the Complaint. The material that the parties agreed to redact, similarly, which consists of an indemnity clause in the MTA, the percentage increases for transload fees and certain fees for accessorials, are unrelated to the central dispute. As such, these categories of facts and figures have a weaker presumption of public access.

### b.  The First Amendment presumption of access.

The First Amendment accords a strong presumption of public access to pleadings that "have historically been open to the press and general public and play a significant positive role in the functioning of the judicial process." *Next Caller Inc. v. Martire*, 368 F. Supp. 3d 663, 666

(S.D.N.Y. 2019) (cleaned up). This presumption of access applies to complaints in civil actions. *Bernstein*, 814 F.3d at 141. "Complaints have historically been publicly accessible by default, even when they contain arguably sensitive information." *Id*. And as discussed above, public access to complaints allows the public to understand the activity of the federal courts.

### III.     Redaction of the Complaint is not justified in order to protect "confidential information."

Notwithstanding the presumption of access under both the common law and the First Amendment, portions of the Complaint may be redacted if "countervailing factors in the common law framework or higher values in the First Amendment framework so demand." *Lugosch*, 435 F.3d at 124 (internal quotation marks omitted). Since "the more stringent First Amendment framework applies," redactions of the documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id*. (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Higher values that may justify the sealing or redaction of documents include the attorney-client privilege, national security concerns, law enforcement interests and the privacy interests of third parties. *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10-CV-655 (LTS) (MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (collecting cases). "Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record . . . ; specific, on-the-record findings are required." *Bernstein*, 814 F.3d at 144–45 (cleaned up).

Amazon argues that disclosure of the Disputed Material will irreparably harm Amazon because the disclosure will adversely affect Amazon's ability to negotiate with vendors and because competitors may use the Disputed Material to their advantage, noting that the Disputed Material is not public nor is it standard for all of Amazon's shipping vendors. Defs.' Letter at 1.

Amazon seeks "narrowly tailored redactions" of the Complaint "to safeguard its proprietary interests." *Id*. at 2. Amazon further argues that "the Court may never even need to consider, let alone pass judgment on, any claims in the Complaint anyway." *Id*.

Taking Amazon's arguments in turn, the Court first finds that the privacy interest in redacting information bearing on a litigant's competitive standing is not sufficient to counteract the strong presumption of public interest. The Court acknowledges that courts have recognized harm to a litigant's competitive standing as a justification for limiting public access to judicial documents. *See, e.g., Encyclopedia Brown Prods., Ltd. V. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (directing parties to propose redactions for certain documents that may affect the defendants' competitive position, including documents expected to be offered as evidence at trial, but placing the Court's decisions in the public record without redactions). However, that is insufficient to outweigh the strong presumption of access here. Amazon must make a "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Amazon states conclusorily that disclosure of the Disputed Material will adversely affect Amazon's ability to negotiate with vendors and that competitors "could use" the Disputed Material to their advantage. Defs.' Letter at 1. These broad allegations do not outweigh the strong presumption of access. *See Bernstein*, 814 F.3d at 142; *In re Google Digital Advert. Antitrust Litig.*, No. 21-CV-6841 (PKC), 2021 WL 4848758, at *4 (S.D.N.Y. Oct. 15, 2021) (holding that the strong presumption of access outweighs the privacy interests put forth by the party seeking redactions, which were "limited to a generalized risk that disclosure might give counterparties leverage in future negotiations"); *see also Saadeh v. Kagan*, No. 20-CV-1945

(PAE) (SN), 2021 WL 965334, at*2 (S.D.N.Y. Mar. 15, 2021) ("The potential for a negative impact on a party's future business or social status does not outweigh the presumption of access.").

That Amazon's competitors previously had no insight into the numbers that comprise the Disputed Material does not mean the Court must approve redactions of such. *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17-CV-7417 (VM) (HBP), 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017); *see also Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98-CV-8721 (LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public.").

Second, simply because the proposed redactions are narrow—a fact the Court acknowledges—does not mean that the redactions must be granted. Courts in this district have found that even narrow redactions do not necessarily outweigh the presumption of public access. *See In re Google Digital Advert. Antitrust Litig.*, 2021 WL 4848758, at *3 ("Though the volume of redactions is small in proportion of the 482-paragraph complaint, the redacted information gives concrete detail about plaintiffs' allegations and are relevant to the plausibility of their claims."). Here, as in *In re Google Digital Advert. Antitrust Litig.*, few redactions are requested. However, the material that is requested to be redacted goes to the heart of the litigation, and thus the privacy interests do not outweigh the presumption of public access.

Third, that the Court may not need to pass judgment on the claims in the Complaint does not diminish the strong presumption of public access to the information in the Complaint. Even if the case is decided on a motion to dismiss, the parties come to a settlement agreement or the case is disposed of in another manner, the Complaint still contains information useful to the public.

12

*See Bernstein*, 814 F.3d at 140 ("Even in the settlement context, the inspection of pleadings allows the public to discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed.") (cleaned up). And despite Defendants' claims that these issues are almost always addressed much later in a litigation, courts often make decisions on whether to redact or seal complaints early in the litigation. *See, e.g., Delta Air Lines, Inc.*, 462 F. Supp. 3d 354 (denying motion to seal the complaint approximately one month after the complaint was filed); *Haider v. Geller & Co. LLC*, 457 F. Supp. 3d 424 (S.D.N.Y. 2020) (deciding on motion to seal the complaint less than two months after the case was filed).

Having weighed the high presumption of access that attaches to these judicial documents against the important, but lesser, interests of the litigants in maintaining their competitive standing, the Court finds that the requested redactions of the Performance Standards, Type Withdrawal Payment and Notice Period are unwarranted. The request to redact Certain Fees and the Refund is justified, although the Court is open to reevaluating the need for those redactions at a later point in the litigation.

**IV.    Nondisclosure agreement.**

Amazon additionally argues that there is a valid nondisclosure agreement ("NDA") between the parties that applies here, which GSC disputes. Defs.' Letter at 3. The Court need not determine whether the NDA applies, as "bargained-for confidentiality does not overcome the presumption of access to judicial documents." *Bernsten*, 307 F. Supp. 3d at 168 ; *see also Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12-CV-3274 (JPO), 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents . . . Respondents may have an action for

13

breach of contract against [petitioner] for its alleged failure to adhere to its obligations under the confidentiality agreement – the Court makes no finding whatsoever on that question."). And as provided for in the NDA, the parties "may disclose Confidential Information as required to comply with orders of governmental entities with jurisdiction over it." ECF No. 15-2.

Though Amazon alleges that GSC only disagrees with the redactions because GSC breached its confidentiality obligations by disclosing the Disputed Materials and seeks to have the Court "rubberstamp its misstep," Defs.' Letter at 3, motive is generally "irrelevant to defining the weight accorded the presumption of access." *Amodeo II*, 71 F.3d at 1050.

### Conclusion

For the reasons stated above, the Court GRANTS in part and DENIES in part the request to redact the Complaint. Plaintiff is directed to publicly file a version of the Complaint that conforms to this Order no later than August 9, 2023. The parties are further directed to redact, consistent with this Order, their respective letters (ECF Nos. 15, 16 and 19) and re-file them by August 9, 2023.

Dated:  August 4, 2023
         New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge