



**Rodman E. Honecker**
rhonecker@windelsmarx.com

**156 West 56th Street** | New York, NY 10019
**T. 212.237.1000 | F. 212.262.1215**

April 19, 2024

**VIA ECF**

Hon. Jessica G. L. Clarke, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

> Re:     **GSC Logistics, Inc. v. Amazon.Com Services, LLC, et al.**
>         **S.D.N.Y., Case No. 23-cv-5368 (JGLC)**

Dear Judge Clarke:

Please accept this as a joint letter motion of counsel made, pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices regarding the subject discovery dispute. See Individual Rules and Practices 4(k) (requiring, *inter alia*, a joint letter explaining the nature of the Parties' discovery dispute and, if applicable, requesting an informal conference).[1]

## I.     Facts Relevant to the Subject Dispute Over GSC's RFP Nos. 15-18

The Parties are at an impasse with regard to the subject Dispute (the "Dispute") regarding Plaintiff GSC Logistics, Inc.'s ("**GSC**") First Set of Requests for the Production of Documents ("RFP") Nos. 15-18 (the "Capacity Requests"), and production thereto by Defendants Amazon.com Services LLC and its affiliate Amazon Logistics, Inc. (together, "**Amazon**"). GSC seeks documents supporting its allegations that Amazon over-expanded its logistics capacity in response to the Covid-19 pandemic and, once the demand for Amazon's services receded along with the pandemic, Amazon cut its excess capacity, including by wrongfully terminating its Master Transportation Agreement and Work Order (collectively, the "Agreement") for transloading services with GSC two years prior to the end of the term. Allegations which Amazon has explicitly denied.

Plaintiff's Capacity Requests, served on November 3, 2023, seek the following: "15. Documents sufficient to demonstrate that Amazon over-expanded its capacity as a result of the surge in business associated with the Covid-19 Pandemic"; "16. Documents sufficient to demonstrate that Amazon contracted its capacity with respect to shipping, logistics and

---

[1] A meet and confer concerning the Dispute took place on April 3, 2014, starting at 1:30 PM EST and lasting approximately 40 minutes, via Zoom, between the following attorneys: (1) for GSC, Rodman E. Honecker, Ben J. Kusmin, and Dennis A. Amore; and (2) for Amazon, Rasheed McWilliams, Kimberly Bousquet, and Helena Berezowskyj.

Hon. Jessica G. L. Clarke, U.S.D.J.
April 19, 2024
Page 2

warehousing as the effects of the Covid-19 Pandemic receded"; "17. Documents sufficient to demonstrate Amazon entered agreements with shipping and/or logistic counterparties, other than GSC, during the Relevant Period"; and "18. Documents sufficient to demonstrate Amazon terminated agreements with shipping and/or logistic counterparties, other than GSC, during the Relevant Period."  GSC's RFP Nos. 15-18.

Amazon objected and responded to the Capacity Requests, in part, as follows: (1) RFP No. 15: "[s]ubject to and without waiving the foregoing, Amazon states it is not presently aware of any responsive, non-privileged documents and things"; (2) RFP No. 16: "[s]ubject to and without waiving the foregoing, Amazon states it is not presently aware of any responsive, non-privileged documents and things"; (3) RFP No. 17: Amazon objected and did not agree to produce any documents in response; (4) RFP No. 18: Amazon objected and did not agree to produce any documents in response.

By letter dated December 8, 2023, GSC justified RFP Nos. 15 and 17 by explaining that "[t]he requested material is directly relevant to Plaintiff's allegation that Amazon increased its logistics capacity in conjunction with the onset of the pandemic … [r]esponsive material would include new contracts with logistics companies, shippers, warehouses, and the like, in the March 2020-December 2021 timeframe; internal and external communications regarding same; and related forecasting documents …" GSC justified RFP Nos. 16 and 18 by explaining that "[t]he requested material is directly relevant to Plaintiff's allegation that Amazon contracted its logistics capacity as the effects of the pandemic subsided … [r]esponsive material would include documents that reflect Amazon's efforts to "optimize [its] fulfillment network" in the 2022-2023 timeframe.

Negotiations continued *via* correspondence (on December 31, 2023; January 12, 2024; January 18, 2024; January 31, 2024; February 23, 2024) and in meet and confer calls (on December 21, 2023; February 8, 2024; and April 3, 2024). During these negotiations, GSC agreed to let Amazon limit its production to documents involving Amazon's Global Mile program. In an effort to come to terms, during the December 12, 2023 meet and confer, Amazon agreed to reconsider their responses subject to narrowing. At the February 8, 2024 meet and confer, Amazon agreed to supplement their responses and produce documents relating to Amazon's Global Mile program relating to the Port of Oakland and limited to the transloading services provided by GSC.

On March 4, 2024 Amazon served amended responses to the Capacity Requests agreeing to produce documents "regarding its Global Mile program relating to the Port of Oakland limited to the services provided by GSC." See Amazon's Amended and Supplemented Responses. GSC objected to that limitation on March 21, explaining that the Capacity Requests have nothing to do with "services provided by GSC" and that this limitation "defeats the whole purpose of the requests." GSC further contested Amazon's responses because "[t]he RFPs in question do not relate to the GSC transloading work at all." Amazon stood behind its supplemental responses. In a responsive email on March 27, Amazon indicated that it would not change position on the Capacity Requests, because they "seek documents outside the scope of discovery and GSC has not provided any rational reason for production of documents outside of the scope of discovery."

Hon. Jessica G. L. Clarke, U.S.D.J.
April 19, 2024
Page 3

During the April 3, 2024 meet and confer, the parties continued to disagree on the scope of the Requests and GSC's counsel provided specific examples of documents being sought by each request. Amazon inquired as to GSC's willingness to serve additional Requests as articulated by GSC's counsel so Amazon could respond accordingly. Amazon also asked GSC to define what it meant by "sufficient to show" in the Requests. GSC gave examples of what could be "sufficient to show" but declined Amazon's request to serve narrowed requests and provide a further explanation of what it meant by "sufficient to show." This left the Parties at an impasse.

## II.    GSC's Position Regarding the Nature of the Dispute: *Amazon Should Be Compelled to Produce Documents Responsive to GSC's RFPs 15-18*

Rule 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 34 provides for requests to produce documents and ESI. Fed. R. Civ. P. 34(a)(1)(A). When responding to such requests, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Rule 37 provides for motions to compel for failure to produce documents, respond that inspection will be permitted, or permit inspection. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Such motions to compel are granted at the Court's discretion. See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

Amazon should be compelled to produce documents responsive to the Capacity Requests, because those requests seek material about Amazon's conduct that are relevant to the allegations in the First Amended Complaint. Indeed, the material sought in RFP Nos. 15 and 17 may show that Amazon did not hire a replacement logistics provider for the Port of Oakland after it cut ties with GSC in February 2023. Also, the material sought in RFP Nos. 16 and 18 may show that Amazon cancelled its contracts with other logistics providers in early 2023. Both of these facts, if proven, would support GSC's theory that Amazon cancelled its logistics agreement with GSC because it made a business decision to stop using the Port of Oakland (FAC ¶ 127) and/or because it experienced an overall contraction of business as the effects of the Covid-19 pandemic receded (FAC ¶¶ 46-50)[2] – rather than because of GSC's performance, as claimed by Amazon.  (FAC ¶ 51).

Amazon's proposal to limit its production to only documents relating to services provided by GSC is not only improper, but would effectively eliminate any potentially responsive documents from consideration. This is because the Capacity Requests relate to *Amazon's conduct*, not GSC's. Amazon's proposed limitation seems designed to provide plausible deniability, while guaranteeing that the documents sought will never see the light of day. Also, GSC has taken steps to limit Amazon's purported overbreadth concerns. Among other things, GSC has pointed out that

---

[2] The Daily Mail reported in 2023 that Amazon CEO Andy Jassy "has been taking the ax to dozens of [former CEO Jeff Bezos'] pet projects, [including] reversing the company's warehouse expansion program . . ." https://www.dailymail.co.uk/news/article-12567893/Amazon-Jassy-Bezos-sanchez-ftc.html (*Amazon's new CEO Andy Jassy 'is being forced to clean up Jeff Bezos' mess that saw firm expand too quickly during COVID as firm's billionaire owner enjoys 'neverending vacation'"*) (Sep. 27, 2023)(last accessed April 4, 2024).

Hon. Jessica G. L. Clarke, U.S.D.J.
April 19, 2024
Page 4

the requests are in the nature of "sufficient to demonstrate" requests. *See* Feb. 14, 2024 GSC Letter. To date, Amazon has refused to suggest any way to identify any responsive documents, merely insisting that the requests are overbroad. Amazon should be compelled to produce documents in response to the Capacity Requests without the limitation to "services provided by GSC."

Amazon's contention that its motives are irrelevant assumes Amazon will be able to prove its purported termination was consistent with the parties' agreements.  This argument is hotly contested and, certainly at this juncture, cannot justify Amazon's refusal to produce discovery.  In addition, Amazon's motive behind its wrongful purported termination is indeed relevant to GSC's claim for breach of the covenant of good faith and fair dealing.

### III.    Amazon's Position Regarding the Nature of the Dispute: *Production Should Be Limited As Set Forth In Amazon's March 4, 2024, Supplemental Responses*

"The burden of demonstrating relevance is on the party seeking discovery." *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011); *see also* Fed. R. Civ. P. 26(b)(5)(A); Local Civil Rule 26.2. GSC has failed to meet its burden and unreasonably rejected Amazon's attempts to narrow the scope of the Requests to relevant matters. Amazon has two primary objections to the Requests. First, the information sought is not relevant to the claims or defenses and therefore beyond the scope of discovery. As GSC acknowledges, the point of the Requests are to seek information that would purportedly demonstrate Amazon's motivation or intent in terminating the Agreement. But Amazon's subjective motivation is irrelevant as a matter of law to the question of whether Amazon breached the contract. *Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 93 CIV. 2189 (SWK), 1995 WL 326475, at *8 (S.D.N.Y. May 31, 1995), aff'd, 101 F.3d 684 (2d Cir. 1996) ("since defendant had the right to terminate the Agreement upon plaintiff's breach, it is legally irrelevant whether defendant was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract."). Amazon terminated the Agreement for cause because GSC failed to meet the required minimum service levels. This termination was in accordance with the contract, therefore no amount of discovery into Amazon's logistics capacity, contracts with other providers, or subjective intent will have *any bearing whatsoever* on the legal question of whether Amazon had the right to terminate the Agreement. In short, the Requests seek information "to demonstrate" facts that have no relevance.

Second, the requests are overbroad and vague to the point of absurdity. No. 15 seeks information related to "overexpansion" or "capacity"— without defining either term. Amazon's operations network is comprised of numerous organizations, including, for example, multiple business organizations that operate distinct types of warehouses; a delivery organization (last mile); a trucking organization (middle mile); an air business, and its Global Mile organization, which is the only organization at issue here. Despite being made aware of the overbreadth of its requests numerous times, GSC maintains its requests seeking discovery related to *all* "shipping, logistics, and warehousing" and "shipping and/or logistics counterparties." GSC indicated that the disputed requests are based on its speculation that Amazon must have entered or terminated contracts with GSC's competitors, which is irrelevant to the termination of the Agreement with GSC. *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21,

Hon. Jessica G. L. Clarke, U.S.D.J.
April 19, 2024
Page 5

2002) ("Discovery requests cannot be based on pure speculation[.]"). RFPs 15 and 16 also relate to issues that were widely reported in the media.  GSC provides no explanation for how documents from Amazon are needed for it to establish this point. *See* n.1. GSC's agreement to limit Amazon's responses to documents "sufficient to demonstrate" does not go far enough to cure the overbreadth of its requests.

Even if GSC could show some relevance and even if the requests were not facially overbroad, they are plainly disproportionate to the needs of the case. Amazon has agreed to produce documents related to ten custodians, applied search terms that returned tens of thousands of document hits, agreed to run all of GSC's proposed email search terms (adding thousands of more documents), and agreed to run all but one of GSC's proposed Chime and Slack search terms.[3] Amazon plans to produce tens of thousands of documents. GSC will have far more than they could ever need to pursue their claims. The parties should now move to the merits of the dispute rather than allow GSC's fishing expedition into Amazon's entire logistics business. Because GSC's Requests are facially unreasonable in their breadth and not proportional to the need of this case, Amazon requests this Court narrow the scope of discovery as set forth in Amazon's March 4, 2024, supplemental responses.[4]

Respectfully submitted,

**Windels Marx Lane & Mittendorf, LLP**        **Davis Wright Tremaine, LLP**

By: */s/ Rodman E. Honecker*                    By: */s/ Rasheed McWilliams*
   Rodman E. Honecker                              Rasheed McWilliams
156 West 56th Street                            865 South Figueroa Street - Suite 2400
New York, NY 10019                              Los Angeles, CA  90017-2566
*Attorneys for Plaintiff*                       *Attorneys for Defendants-Counterclaimants*

Enclosures

Application GRANTED in part and DENIED in part. Based on the parties' submission, including their negotiations regarding the disputed requests, the Court orders Defendants to produce: (1) any contracts Amazon entered into, after terminating the agreement with GSC, to replace GSC as a logistics provider for the Port of Oakland; and (2) documents sufficient to demonstrate Amazon terminated agreements with shipping and/or logistics counterparties, other than GSC, during the Relevant Period and that were related to Amazon's Global Mile Program. Because Plaintiff's remaining requests are overly broad and, in certain respects, vague, the Court denies Plaintiff's motion in all other respects. The Clerk of Court is directed to terminate ECF No. 55.

[3] The only term Amazon did not agree to run was "breach*" and that was because it returned over 17,000 hits.

[4] *See Hamilton Sundstrand Corp. v. Aircraft Propeller Serv.*, 2020 WL 8838031, at *2 (S.D.N.Y. June 22, 2020) ("[R]esponding party may limit discovery" even where even if the discovery is relevant."); *Ahmed v. City of New York*, 2023 WL 8355782, at *2 (S.D.N.Y. Dec. 1, 2023) ("The Court cans limit the scope of discovery where the burden or expense of the proposed discovery outweighs its likely benefit.")

Dated: April 23, 2024
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge