
**Davis Wright Tremaine LLP**

Suite 2400
865 South Figueroa Street
Los Angeles, CA  90017-2566

**Rasheed McWilliams**
213.633.8620 tel
213.633.6899 fax

rasheedmcwilliams@dwt.com

July 3, 2024

**MEMO ENDORSED**

**VIA ECF:**

Hon. Jessica G. L. Clarke, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  **GSC Logistics, Inc. v. Amazon.com Services LLC and Amazon Logistics, Inc., S.D.N.Y., Case No. 1:23-cv-05368-JGLC**

Dear Judge Clarke:

Please accept this joint letter motion of counsel made, pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices, to (*i*) explain the nature of the subject discovery dispute concerning Defendants Amazon.com Services LLC and Amazon Logistics, Inc.'s (collectively, "Amazon") Second Set of Requests for Production Nos. ("RFP(s)") 42-45, and Plaintiff GSC Logistics, Inc.'s ("GSC") (collectively, the "Parties") Responses and Objections thereto (the "Dispute"), and (*ii*) request an informal conference before the Court regarding the Dispute or, alternatively, that Your Honor set a briefing schedule on Amazon's anticipated Motion to Compel against GSC.

I.   **Facts Relevant to the Subject Discovery Dispute over Amazon's RFPs 42-45**

Amazon's RFPs 42-45 seek documents related to all services and contracts provided by GSC to "any client, customer, or any other third-party, at any United States ports" including the scope of transloading services provided by GSC (RFP 42), GSC's transloading contracts with other parties (RFP 43), any complaints and/or service failures (RFP 45), and any instances of threatened and/or actual termination of transloading contracts (RFP 44). GSC, inter alia, objected to RFPs 42-45 "on the basis that it seeks documents that are not relevant to any party's claim or defense." (Resp., pp. 4-5.).  GSC declined to respond further to these requests. (*Id.*)

Amazon sent GSC a letter on April 29, 2024 requesting to meet and confer, and setting forth Amazon's basis for why RFPs 42-45 are relevant to the claims and defenses at issue in this

Hon. Jessica G. L. Clarke, U.S.D.J.
July 3, 2024
Page 2

case. GSC responded to the letter on May 9, 2024 in which it affirmed its objections and stood by its refusal to produce any documents responsive to RFPs 42-45.[1]

## II. Amazon's Position Regarding the Nature of the Dispute: *GSC Should be Compelled to Supplement its Responses and Produce Documents Responsive to RFP Nos. 42-45.*

GSC refused to produce any documents in response to Amazon's RFP Nos. 42-45 based on GSC's relevance objection to each request. GSC's responses, however, fail to "state whether any responsive materials are being withheld on the basis of [GSC's relevance] objection" as required under FRCP 34. *See* Fed. R. Civ. P. 34(b)(2)(C); *see, e.g.*, *Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-CV-11118 (LJL), 2022 WL 889143, at *5 (S.D.N.Y. Mar. 24, 2022). Also, GSC's general objections are boilerplate and fail to establish how each request is "overbroad" or unduly "burdensome." Indeed, the burden may be supported by, for example, submitting an affidavit or offering specific evidence, both of which are consistent with SDNY precedence. *See Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012). GSC failed to meet this burden. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87–88 (S.D.N.Y. 2016). Nevertheless, to come to terms, Amazon has limited the scope of RFPs 42-45 to cover only GSC's transloading services provided at the Port of Oakland, which should resolve any such concerns.[2]

FRCP 26(b)(1) expresses that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* To establish relevance, a party need only "'make a *prima facie* showing that the discovery sought is more than a mere fishing expedition.'" *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MD01570GBDSN, 2023 WL 4447869, at *2 (S.D.N.Y. July 11, 2023). Whether discovery sought is merely "the proverbial fishing expedition is determined in large measure by the allegations of the pleading." *Id.*, at *6. Here, the documents sought by RFPs 42-45 are relevant to supporting Amazon's defenses and counterclaims and contesting GSC's allegations in the First Amended Complaint ("FAC").

The documents sought by RFPs 42-45 are relevant to Amazon's defenses and counterclaims, including Amazon's unclean hands defense which may be established through evidence of GSC's fraudulent, deceitful, or bad faith conduct throughout the entirety of the parties' contractual relationship, and relating to the matters at issue in this litigation. *See*, *e.g.*, *Med. Soc'y*

---

[1] The Parties conducted a meet and confer in an attempt to resolve the Dispute on May 31, 2024. During the meet and confer, Amazon stated that it would limit the scope of RFPs 42-45 to cover only GSC's transloading services provided at the Port of Oakland. In response, GSC noted that limiting the scope to the Port of Oakland was not a material narrowing because Oakland is its base of operations. The Parties declared the dispute was at an impasse. The meet and confer lasted about 30 minutes, and the following attorneys participated: (1) Amazon: Rasheed McWilliams, Kimberly Bousquet, Helena Berezowskyj, and Brian Kennedy; and 2) GSC: Rodman Honecker, Ben Kusmin, and Dennis Amore.

[2] GSC's objections as to temporal limitations are misplaced. GSC's *general* request for temporal limitation was denied, as GSC did not propose a limitation for Amazon's consideration. Amazon's RFP Nos. 42-45 are clearly limited to "the time period from January 1, 2020 to the present day." *See* Defendants' Second Set of RFPs, p. 8 at ¶ 10.

{41162736:1}

Hon. Jessica G. L. Clarke, U.S.D.J.
July 3, 2024
Page 3

*of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019). GSC's conduct is not limited to a 6-week period as GSC contends. Throughout its FAC, GSC seeks to blame Amazon for GSC's performance failures under the Parties' agreement. (*See, e.g.*, DE 29, at ¶¶51-104.) However, Amazon believes GSC overstated and embellished its actual transloading experience, knowledge, and capabilities in order to secure its lucrative agreement with Amazon, and these representations were made to Amazon in bad faith. For example, GSC represented in its proposal to Amazon that GSC (1) could provide a "60 day turn key operation ready to meet SLA requirements day one," (2) can "handle over 30,000 containers of [Amazon's] massive supply chain expansion on an annual basis," and (3) "[b]y peak season in 2021, GSC will be handling 700 containers per week through the transload facility." (GSC_00010818, 25, & 29). However, "GSC had difficulties performing [the required transload services] under the Agreement [with Amazon] from the start." (DE 43, p. 24 at ¶22, ¶26 (GSC overcommitted themselves to secure business with Amazon), ¶27 (GSC lacked technology to support the SLA Service Levels); GSC_00010541 (GSC had performance failures with other transload customers beyond Amazon, including Target)). Thus ascertaining the full extent of GSC's transload service experience under other contracts at the Port of Oakland (RFPs 42 & 43), including any service failures and/or complaints (RFP No. 45) and/or threatened or actual termination (RFP No. 44), would be relevant to Amazon's counterclaims and defenses, including unclean hands.

Additionally, this discovery is relevant to contesting the factual allegations in the FAC, GSC asserts in its FAC that "Amazon eagerly pushed to enter into its business relationship with GSC, ***seeking to leverage upon GSC's extensive logistics experience and reputation as a leader in the space in Northern California.***" (DE 29, at ¶1 (emphasis added); *see also id.*, at ¶¶130 & 136.) GSC also alleged that, "Amazon, after being advised by GSC of the OTD SLA timing issues that Amazon had caused, ***again leveraged upon GSC's depth of knowledge and experience*** by adopting GSC's proposed curative action plan . . ." (*Id.*, ¶69 (emphasis added)). Amazon has the right to test the veracity and refute these broad allegations. Moreover, GSC's claims themselves are clearly not limited to just GSC's agreement with Amazon for transloading services provided at the Port of Oakland—as claimed by GSC in its Responses—but rather cover all of GSC's experience providing transloading services to others under contract at the Port of Oakland (RFPs 42 & 43). Additionally, evidence of instances of prior complaints and/or service failures by GSC (RFP 45), and/or threats or actual termination of any contract with GSC (RFP No. 44) in providing transloading services at the Port of Oakland would undermine GSC's allegations of purported expertise, knowledge, and leadership supporting its claims, and thus are highly relevant.

Finally, GSC alleges that it is entitled to "Withdrawal Payments" under the Parties' agreement. (*See, e.g.*, DE 29, at ¶¶101, 105, 110, & 135). The "Withdrawal Payments" provision of the agreement expressly requires GSC to use its "best endeavors to secure new business" to backfill the facilities that handled Amazon-related cargo prior to Amazon's withdrawal, which would mitigate any Withdrawal Payment GSC claims it is now owed. (DE 43-2, p. 7 at Sch. 3.C.) This provision also states GSC had "no obligation to move existing customers or business" into the facilities. (*Id.*) Thus, obtaining discovery relating to GSC's other contracts for transloading services at the Port of Oakland sought by RFP 43 would be relevant to determine whether GSC

Hon. Jessica G. L. Clarke, U.S.D.J.
July 3, 2024
Page 4

complied with its backfilling obligations, including determining GSC's existing customers and whether it secured any new business after Amazon's withdrawal. This discovery is also relevant to Amazon's failure to mitigate defense. (DE 43, p. 19; *see Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 402 (S.D.N.Y. 2014)).

### III.     GSC's Position Regarding the Nature of the Dispute: *Amazon's Requests Are Improper And Seek, Inter Alia, Irrelevant Materials.*

Initially, Amazon failed to raise during the parties' meet and confer that GSC's objections are inadequate (at II, supra) or suggest that GSC should submit "an affidavit" to substantiate the burdensome nature of responding to Amazon's requests.

Notwithstanding that, Amazon argues that it has the right to discover virtually every aspect of GSC's transloading operations, related to every customer of GSC.[3] Amazon's demands extend far beyond the scope of the allegations of the pleadings and would significantly burden GSC. While the scope of discovery is generally broad, it is not unlimited.  See Robertson v. People Magazine, 2015 WL 9077111, at *2 (S.D.N.Y. 2015); see also Bridges v. Correctional Services, 2020 WL 6899695, at *4 (S.D.N.Y. 2020).

Amazon attempts to prop up its claim to virtually limitless discovery by suggesting that GSC somehow misled Amazon about GSC's experience and capabilities ("GSC overstated and embellished its actual transloading experience, knowledge, and capabilities." Id. at 2). However, Amazon has not alleged in its pleadings or discovery responses that GSC induced Amazon into entering the parties' agreements with puffery (or worse). Nowhere in Amazon's current pleading, its Initial Disclosures or its interrogatory answers does this "luring" allegation appear.  Moreover, these belated and unspecified allegations were never made by Amazon during the two-year period the parties worked together, nor were they any part of Amazon's stated basis for termination.[4]

Amazon's other arguments for relevance are equally unavailing.  Amazon cites to allegations in the FAC about Amazon "leveraging" GSC's experience and expertise.  Id. at 3.  Amazon ignores that these allegations are a reference to the genesis of the business relationship. Amazon's John Anfinson reached out to GSC based on Mr. Anfinson's prior business relationship with GSC and requested GSC take on Amazon as a customer.  Accordingly, Amazon was not lured by "embellishments," but rather sought out GSC and came to GSC out of Amazon's own business needs.  Finally, Amazon argues that GSC has a "backfilling" or mitigation obligation that somehow justifies unlimited scrutiny of GSC's transloading operations. Id. at 3-4.   Amazon is wrong about GSC's obligations because the clause cited by Amazon would only be operative if Amazon had made the Withdrawal Payments to GSC.  Amazon is not permitted to stiff GSC on the contractually

---

[3] Amazon now limits Amazon's RFP Nos. 42-45 to "the time period from January 1, 2020 to the present day" (see nt 2 supra).

[4] Amazon's stated in its February 8, 2023 Notice of Termination that it was terminating because GSC allegedly took too long processing containers onto outbound trucks ("SLA OTD") for the period from November 21, 2022 to January 30, 2023.  (GSC_00028986).  Amazon "reasserted" the same contention in subsequent correspondence. (GSC_00021719).  Nowhere did Amazon make any reference to alleged "fraudulent, deceitful or frivolous conduct" as a basis for termination.

Hon. Jessica G. L. Clarke, U.S.D.J.
July 3, 2024
Page 5

mandated liquidated damages while reserving the right to dictate the manner of GSC's mitigation. In any event, GSC has already agreed to produce, and is in the process of producing, documents demonstrating its mitigation efforts.

This case is about whether Amazon terminated for its own convenience (in which case Amazon owes GSC, inter alia, over $15M in liquidated damages). The behavior of the parties during the period relied upon by Amazon to justify its bad faith termination (11/21/22 to 1/30/23) is therefore most relevant. Amazon's attempt to expand discovery to matters involving multiple non-parties with no connection to Amazon should accordingly be seen as a fishing expedition.

## I. Amazon's RFP Nos. 42 and 43

Amazon's RFP No. 42 seeks documents "sufficient to identify all services GSC contracts to provide for any client, customer, or any other third-party, at any United States Ports." In other words, documents related to every single GSC contractual counterparty. Amazon's "concession" of limiting the scope to Oakland and transloading does not cure the absence of relevance, as the majority of GSC's operations have been in Oakland ever since GSC was founded more than 30 years ago. Furthermore, the request remains overbroad, overly burdensome and disproportionate to the needs of the case. See Robertson, 2015 WL 9077111, at *2; see also Bridges, 2020 WL 6899695, at *4 (S.D.N.Y. 2020).

Amazon's RFP No. 43 seeks documents "sufficient to identify all contracts from transloading services GSC has undertaken at any port . . ." In other words, documents related to every single transloading relationship, anywhere. See our response to RFP 42 above.

## II. Amazon's RFP Nos. 44 and 45

Amazon's RFP 44 seeks "[a]ll Documents, Communications and Things Concerning all instances where any client, customer, or any other third-party threatened to terminate or terminated any contract with GSC for any reason . . .." Once again, Amazon makes no effort to justify this overbroad request by tying it to the material allegations in this case but rather argues relevance by citing to the allegations of the FAC about GSC's expertise, etc. According to Amazon, any documentation related to threatened or actual termination of other GSC contracts "would directly undermine and refute GSC's allegations of purported expertise" etc. This contention, of course, is nothing but speculation because commercial agreements are terminated (or threatened to be terminated) for any number of reasons (even assuming there are any such terminations related to GSC).

Amazon's RFP 45 seeks "[a]ll Documents, Communications and Things Concerning all instances where any client, customer, or other third-party complained about GSC and/or any service failures under a contract for services." See response concerning RFP 44 immediately above. See also U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt-Meridian Const. Corp., 1994 WL 577637, at *2 (S.D.N.Y. 1994) (holding evidence regarding prior actions of corporation inadmissible under Rule 404); *see also* F.R.E. 404.

Respectfully submitted,

{41162736:1}

Hon. Jessica G. L. Clarke, U.S.D.J.
July 3, 2024
Page 6

| | |
|---|---|
| **Davis Wright Tremaine, LLP** | **Windels Marx Lane & Mittendorf, LLP** |
| By: */s/ Rasheed M. McWilliams* | By: */s/ Rodman E. Honecker* |
| Rasheed M. McWilliams | Rodman E. Honecker |
| 865 South Figueroa Street - Suite 2400 | 156 West 56th Street |
| Los Angeles, CA  90017-2566 | New York, NY 10019 |
| *Attorneys for Defendants-Counterclaimants* | *Attorneys for Plaintiff* |

As ordered at the conference on July 11, 2024, Plaintiff is directed to produce a list of its transloading clients at the Port of Oakland during the agreed upon time period and any contracts terminated during the same time period. The parties are directed to confer regarding search terms as to any complaints by clients or customers regarding service failures by GSC. Plaintiff shall run these search terms. The parties are then directed to confer and are encouraged to come to an agreement regarding production. Should the parties not agree, the parties may submit a letter to the Court by **July 26, 2024**.

SO ORDERED.

*/s/ Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: July 11, 2024
New York, New York

{41162736:1}