

**Ben J. Kusmin**  
bkusmin@windelsmarx.com

156 West 56th Street | w York, NY 10019  
T. 212.237.1000 | F. 212.262.1215

December 13, 2024

**VIA ECF:**

Hon. Jessica G. L. Clarke, U.S.D.J.  
Daniel Patrick Moynihan United States Courthouse  
500 Pearl Street  
New York, NY 10007-1312

<div style="color:blue">
For the reasons stated on the record at the January 16, 2025 conference before this Court, the parties' requests are GRANTED in PART and DENIED in part as articulated by this Court at the conference. The Clerk of Court is respectfully directed to terminate ECF No. 83.

Dated: January 21, 2025  
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE  
United States District Judge
</div>

Re: **GSC Logistics, Inc. v. Amazon.com Services LLC and Amazon Logistics, Inc., S.D.N.Y., Case No. 1:23-cv-05368-JGLC**

Dear Judge Clarke:

Please accept this joint letter motion of counsel made, pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices, to explain the nature of the subject discovery Dispute concerning Amazon's Privilege Log (the "**Privilege Log**"). Plaintiff GSC Logistics, Inc. ("**GSC**") seeks to compel production by Defendants Amazon.com Services LLC and Amazon Logistics, Inc.'s (collectively, "**Amazon**").

### I. Facts Relevant to the Subject Dispute over Amazon's Privilege Log

Amazon served its Privilege Log on November 7, 2024, and GSC responded via email on December 5, 2024, objecting to certain categories of documents described on Amazon's log.[1] On December 10, 2024, the parties met and conferred through their respective counsel to clarify their positions and attempt to resolve the dispute over the challenged entries set forth herein (the "**Dispute**"). During the meet and confer, the parties mutually declared an impasse as to the Dispute necessitating this joint letter.[2]

### II. GSC's Position Regarding the Nature of the Dispute: *Amazon Should be Compelled to Produce the SLA Analysis Materials*

Amazon purports to withhold various documents and Microsoft Excel files reflecting its factual analysis of GSC's OTD SLA performance (collectively, the "**SLA Analysis Materials**") as attorney-client privileged and/or attorney work product. These documents are described in more detail in an email sent by counsel for GSC to counsel for Amazon, attached hereto as **Exhibit 1**[3],

---

[2] The meet and confer lasted approximately one hour and the following attorneys participated: (1) Amazon: Rasheed McWilliams, Sherron Wiggins, Helena Berezowskyj, Grace Pak, and Shannon Stahl; and (2) GSC: Rodman Honecker, Ben Kusmin, and Dennis Amore.

[3] Counsel for GSC originally identified 57 items for inclusion in "Category A" as SLA Analysis Materials. Counsel for Amazon subsequently identified 24 items from this category that have been produced elsewhere. **Exhibit 2** reflects

Hon. Jessica G. L. Clarke, U.S.D.J.
December 13, 2024
Page 2

and are listed in an excerpt of Amazon's privilege log, attached hereto as **Exhibit 2**. Counsel for GSC has identified entries that are likely to relate to the SLA Analysis (*i.e.*, the analysis performed by Amazon allegedly justifying the termination of the linchpin agreement in this case) based on the filenames, the descriptions on the privilege log, the dates, and the authors and recipients. The SLA Analysis Materials should be produced because i) the analysis was performed for business reasons, and would have been performed even without the prospect of litigation; ii) because the material constitutes factual information and analysis that is not independently privileged; and/or iii) because GSC has a substantial need for the material in the prosecution of its case.[4]-[5]

The work product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). For work product privilege to apply, "the material in question must: (1) be a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative." *Shih v. Petal Card, Inc.*, 565 F. Supp.3d 557, 571 (S.D.N.Y. 2021). "The burden of establishing all three elements of the work product doctrine rests with the party invoking it." *Id*. As to the second prong, in the SDNY "work product must have been created 'because of' existing or expected litigation." *Id*. at 575 (quoting *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998)). Work product privilege does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* at 1202. Under this standard, the SLA Analysis Materials are not entitled to protection for the simple reason that the analysis would have been performed whether Amazon anticipated litigation or not. *See id*. Numerous internal documents produced by Amazon identified the need for such an analysis beginning about two months prior to the termination in February 2023. Amazon deposition witnesses have admitted— and it is clear from the produced documents—that the analysis had to be conducted with respect to GSC in order for Amazon to determine whether it should terminate for convenience and pay the $15 million Withdrawal Payment, or terminate for cause based on the SLA analysis and deny the payment. Thus, Amazon's assertion of work product protection over the SLA Analysis Materials fails the standard articulated in *Adlman* and elsewhere.

Even if the SLA Analysis Materials were otherwise entitled to protection as fact work product, Amazon should produce this material because GSC has a substantial need for this material in the prosecution of its case. Under Fed. R. Civ. P. 26, the work product privilege may be overcome where a party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii); *see Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("[w]here relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had"). The termination analysis is fact

---

as Category 'A' the privilege log entries for the remaining SLA Analysis Materials in dispute, and 'withdrawn' for the 24 items identified by Amazon. For clarity, **Exhibit 2** also includes the parent document for the challenged items.

[4] GSC also challenges Amazon's assertion of attorney-client privilege over 12 communications that do not include any attorneys, described in the exhibits as "Category B."

[5] By way of an email from Amazon's counsels sent late on December 12, 2024 at 10:57 PM EST, Amazon states that it has agreed to produce certain of the challenged SLA Analysis Materials but potentially with redactions (the "**December 12 Email**"), attached hereto as **Exhibit 3**. Without knowing what those materials are, or the extent of the purported redactions, GSC is not prepared to withdraw its challenge as to those materials.

work product, not opinion work product, because it does not reflect the "mental impressions, conclusions, opinions, or legal theories of an attorney." *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000).

A critical issue in this case is whether the OTD SLA calculations used by Amazon to justify its for-cause termination of GSC were performed correctly, and in accordance with the Agreement. Related questions are (i) whether and how Amazon accounted for certain Mitigating Circumstances reported by GSC; (ii) how the "late-arriving milestones" impacted the calculations, if at all; (iii) whether Amazon calculated OTD SLA on a container level or on a "split" or "unit" level; and (iv) whether the calculations were revisited and corrected following Amazon's discovery of a significant network-wide SLA calculation error several weeks after the termination. Even after the depositions of eight Amazon fact witnesses and that of its corporate representative, these issues are still shrouded in mystery or muddled by the conflicting testimony of Amazon's witnesses. The material withheld by Amazon as attorney work product is likely to shed light on these issues, and GSC therefore has a substantial need for this material in the prosecution of its case. *Hickman*, *supra*, 329 U.S. at 511.

To the extent that Amazon also (or only) invokes attorney-client privilege over the SLA Analysis Materials, this assertion ignores the bedrock principle that the privilege "protects communications rather than information" and that "the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications …" *In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp.3d 521, 528-529 (S.D.N.Y. 2015) (citation omitted). As the New York Court of Appeals has put it, the attorney-client privilege "is of course limited to communications—not underlying facts." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (NY 1991) (*citing Upjohn Co. v United States*, 449 U.S. 383, 395-396). Many of Amazon's log entries are described as "[Email or chat] [providing or requesting] information to assist in rendering legal advice of [in-house counsel] regarding analysis of terminating the [Agreement]"[6]; the attached documents—comprising the bulk of the challenged SLA Analysis Material—are described as an attached spreadsheet, draft report, etc. "providing information to assist in rendering legal advice" relating to the termination. Such underlying factual information is not properly withheld. *Spectrum Sys., supra*. GSC does not seek disclosure of the privileged communications between in-house counsel and other Amazon employees *about* the analysis—rather, it seeks the disclosure of the factual information itself.

GSC also challenges 12 emails and Chime communications withheld by Amazon on the basis of attorney-client privilege, and identified as "Category B" in **Exhibits 1** and **2**. These entries consist of communications purportedly "requesting [or providing] information to assist in rendering legal advice" but—according to Amazon's privilege log—do not include any attorneys on the communication. Amazon has failed to make a *prima facie* showing that these communications are privileged, because the attorney-client privilege protects against disclosure of "evidence of a confidential communication made between the attorney [] and the client in the course of professional employment" (N.Y.C.P.L.R. § 4503(a)(1)), and "the party asserting the

---

[6] Most of the parent communications (*i.e.*, the attaching email or Chime thread) are not being challenged; they are included in Exhibit 2 as Category 'C' to provide context for the challenged attachments. *See e.g.,* Entries 332-336 (2/1/2023); 264-266 (2/7/2023). Some of the parent communications of SLA Analysis Material are challenged under Category B (discussed below) because they do not include attorneys. *See e.g.*, 260-261 (1/23/2023), 308-309 (1/23/2023).

privilege bears the burden of establishing each element through competent evidence." *Shih*, *supra*, 565 F. Supp.3d at 566. Failing to allege that an attorney was involved in the communication, or even that the communication reflects the advice of counsel, is fatal to these assertions of attorney-client privilege.

### III.    Amazon's Position Regarding the Nature of the Dispute: *Amazon's Assertions of Privilege[7] are Proper and Its Protected Documents Should be Withheld*

GSC would have the Court believe that after producing of over 70,000 documents and providing over fifty hours of testimony, Amazon is hiding information critical to prove GSC's case and must be compelled to give up privileged information to solve the "mystery" of how Amazon analyzed GSC's SLA performance under the Work Order. Amazon should not be compelled to produce privileged documents just because GSC does not have a strong case.

*Amazon's Work Product Assertions are Proper*

Amazon's assertion of work-product protection over thirteen (13) documents is proper. Contrary to GSC's contentions, the documents in question were not prepared during the ordinary course of business. Rather, they were exchanged or created just prior to GSC's receipt of the February 8, 2023 Notice of Termination, GSC's February 15, 2023 response, and Amazon's February 28, 2023 response, all in anticipation of litigation that commenced on June 23, 2023. Amazon's privilege log clearly demonstrates that the disputed documents are protected under the work product doctrine and GSC is not entitled to any production thereof.

"[T]the party seeking [work product doctrine] protection must demonstrate that, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *United States v. Adlman*, 134 F.3d, 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343 (2d ed.1994)) (emphasis in original)). Unlike the attorney-client privilege, the work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared "because of" the prospect of litigation. *Id.*

All of Amazon's work product assertions pertain to Chime messages or images embedded in Chime messages[8] and are described in the privilege log as assisting Legal in rendering legal advice or analysis of terminating the Work Order.

GSC argues that Chime messages exchanged before and on the date GSC received the Notice of Termination were sent purely for business reasons and are not independently privileged. Specifically, GSC contends that (i) screenshots of a draft spreadsheet and draft report embedded in a separate February 7, 2023 Chime message (Privilege Log Entry Numbers ("Entry Nos."). 265, 266) between two Amazon employees and Legal, and (ii) presentation screenshots provided by in-house counsel (Entry Nos. 268, 270) embedded in a Chime message between Amazon employees

---

[7] Attached hereto as **Exhibit 4** is a compilation of privilege log entries at issue following Amazon's confirmation of exemplary Bates Numbers and supplemental document production.

[8] Amazon's internal messaging application (Chime) allows users to embed full images within the message body, which is akin to pasting an image into the body of an email.

and Legal, all exchanged to assist Legal in providing legal advice and prepared in anticipation of litigation regarding the drafting and execution of the Notice of Termination of the Work Order, are not work-product. The timing and descriptions of the communications and embedded images support a finding that they were not created in only the ordinary course of business. Indeed, as described on Amazon's privilege log, and paraphrased above, these documents relate to legal analysis prepared in anticipation of litigation due to termination of the Work Order. Further, the description of the documents and communications show that they relate to assisting Legal with providing legal advice before terminating GSC.

GSC also disputes that a Chime message and its embedded screenshots of draft reports (Entry Nos. 245-249, and 251) exchanged between two non-legal Amazon employees the day after receiving GSC's February 15, 2023 response to Amazon's Notice of Termination are also not entitled to work-product protection. Similarly, GSC argues that a February 23, 2023 Chime message (Entry Nos. 252, 386, exchanged between two non-legal Amazon employees exchanging information for the purpose of assisting Legal with rendering legal advice and prepared in anticipating of litigation) is not work-product. Lastly, GSC argues that an image of a draft report (Entry No. 321) embedded in a May 21, 2023 Chime between an Amazon employee and Legal is not protected and should be produced. Again, the timing and nature of the communications and embedded message support a finding that the communications were exchanged because of the prospect of litigation. Accordingly, Amazon is entitled to protections afforded under work-product and should not be compelled to produce.

Each of the twelve documents over which Amazon asserts work-product was prepared in anticipation of litigation and because of the prospect of litigation—including specifically the potential legal ramifications of terminating a contract. Under FRCP 26(b)(3), these documents are clearly work-product and protected from disclosure.

***Amazon's Attorney-Client Assertions are Proper***

Amazon asserts attorney client privilege over the remaining fourteen (14) documents in dispute. These include a memorandum (Entry Nos. 80, 81, 89, 96, 97, 135, 136) requesting legal advice from Legal regarding an analysis of the Work Order termination, embedded Chime message images (Entry Nos. 292, 298, 336) of legal advice communications from Amazon's in-house Counsel, embedded Chime images of reports that Legal provided to an Amazon employee (Entry Nos. 323, 325) and conversations between employees discussing conversations with in-house counsel (Entry Nos. 338, 386) providing legal advice regarding termination of the Work Order.

The fact that some of the documents or communications are between non-legal employees does not eviscerate protections to which Amazon is entitled. Attorney client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation." *Delta Fin. Corp. v. Morrison*, 15 Misc. 3d 308, 316–17, 829 N.Y.S.2d 877, 885 (Sup. Ct. 2007). "Notwithstanding that non-lawyers are conducting a conversation; a communication is the subject to the attorney-client privilege if the record is clear that a conversation with counsel is the subject of the communication between the non-lawyers." *Delta Fin. Corp. v. Morrison*, 17 Misc. 3d 1113(A), 851 N.Y.S.2d 63 (Sup. Ct. 2007).

Amazon's assertions of attorney-client privilege are based on either conversations with in-house counsel where employees seek and/or counsel renders legal advice, or conversations

Jqp0Lguukec"I 0N0Enctmg."WUFO0"
Fgego dgt"35."4246"
Rci g"8"

dgvy ggp"pqp/ngi cn"go r nq{ggu"f kuewuukpi "cf xkeg"qh"qt"c"tgswguv"htqo "ngi cn0"Ceeqtf kpi n{."vj gug"f qewo gpvu"ctg"r tqvgevgf "cpf "Co c|qp"uj qwnf "pqv"dg"eqo r gmgf "vq"r tqf weg0"

*GSC Does Not Have a Substantial Need for Amazon's Privileged Documents*

I UE"cti wgu"kv"ku"gpvkvngf "vq"Co c|qpøu"r tkxkngi gf "f qewo gpvu"wpf gt"vj g"o kui wkf gf "dgnkgh" vj cv"vj gug"f qewo gpvu"y knn"r tqxkf g"c"hwtvj gt"gzr ncpcvkqp"qh"j qy "Co c|qp"ecnewncvgf "I UEøu"QVF " UNC"o gvtkeu0"I UE"f gr qugf "pkpg"*÷+"ewttgpv"qt"hqto gt"Co c|qp"go r nq{ggu"cpf "qpg"Co c|qp" eqtr qtcvg"y kpguu0"O wnkr ng"y kpguugu"vguvkhkgf "vj cv"*k+"Co c|qpøu"kpvgtpcn"f cvcdcug"ecnewncvgf "QVF " UNC"dcugf "qp"f cvc"tgegkxgf "htqo "I UE."*kk+"Co c|qpøu"f cvcdcug"f kf "pqv"tgo qxg"I UEøu"cmgi gf " O kvki cvkpi "Ektewo uvcpegu"r tkqt"vq"ecnewncvkpi "QVF "UNC."*kkk+"Co c|qpøu"f cvcdcug"ku"c"õnkxkpi ö" u{uvgo ."o gcpkpi "vj cv"vj g"f cvc"ku"eqpuvcpvn{"ej cpi kpi "dcugf "qp"vj g"uvcvwu"ej cpi g"qh"eqpvckpgtu"cpf " vtcklgtu"r tqeguugf "d{"vtcpur qtf gtu"cpf "cp{"kphqto cvkqp"tgi ctf kpi "QVF "UNC"y qwnf "r gtvckp"vq"qpn{" y j cv"o qo gpv"kp"vko g."cpf "*kx+"cukf g"htqo "tgecnewncvkqpu"kp"ku"Hgdtwct{"4."4246"ngwgt."Co c|qp" f kf "pqv"tgecnewncvg"I UEøu"QVF "UNC"o gvtkeu0"Vj gtg"ku"pq"co dki wkv{."qt"kpeqpukuvgpv"qt"eqphnkevkpi " vguvko qp{"vj cv"y knn"uqo gj qy "dg"tguqnxgf "wr qp"eqo r gnkpi "Co c|qp"vq"r tqf weg"f qewo gpvu" r tqvgevgf "wpf gt"vj g"y qtm"r tqf wev"f qevtkpg"qt"cwqtpg{-enkgpv"r tkxkngi g0"J qy gxgt."kh"uq"f guktgf ." Co c|qp"ku"r tgr ctgf "vq"r tqxkf g"vj g"f qewo gpvu"kp"s wguvkqp"vq"vj g"Eqwtv"hqt"kp-eco gtc"kpur gevkqp0"

**Davis Wright Tremaine, LLP**                    **Windels Marx Lane & Mittendorf, LLP**

D{<aa1uITcuj ggf "O 0O 0"eY knnkco uaaaa""""""""""""""D{<aa1uIDgp"L0Mwuo kpaaaaaaaaaaaa"
        Tcuj ggf "O 0O 0"eY knnkco u"                              Dgp"L0Mwuo kp"
: 87"Uqwvj "Hki wgtqc"Uvtggv/Uwkvg"4622"            378"Y guv"78vj "Uvtggv"
Nqu"Cpi gngu."EC"; 2239/4788"                       P gy "[ qtm"P [ "3223; "
*Attorneys for Defendants-Counterclaimants*        *Attorneys for Plaintiff-Counterdefendant*